Judgment rendered June 30, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,986-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BLACKJACK FARMS, L.L.C.                          Plaintiff-Appellant

versus

EDWARD L. RICHMOND,                             Defendant-Appellee
ET AL.

* * * * *

Appealed from the
Thirty-Seventh Judicial District Court for the
Parish of Caldwell, Louisiana
Trial Court No. 28,221

Honorable Ashley Paul Thomas, Judge

* * * * *

| | |
|---|---|
| WILSON & WILSON<br>By: R. Joseph Wilson<br>Christie C. Wood | Counsel for Appellant |
| COTTON, BOLTON, HOYCHICK<br>& DOUGHTY, L.L.P.<br>By: David P. Doughty | Counsel for Appellee,<br>Dubea Investments<br>Kinder, LLC |
| MIXON, CARROLL, FRAZIER &<br>& McILWAIN, LLC<br>By: James E. Mixon | Counsel for Appellees,<br>Edward Lynn Richmond;<br>Charles Arnold Richmond;<br>Charles Arnold Richmond,<br>Jr.; Jonathan Wade<br>Richmond; Justin Travis<br>Richmond; and Ronald<br>Dean Richmond |

* * * * *

Before PITMAN, THOMPSON, and ROBINSON, JJ.

**PITMAN, J**.

Plaintiff-Appellant Blackjack Farms, L.L.C. ("Blackjack"), appeals the trial court's ruling in favor of Defendants-Appellees Edward L. Richmond, et al. (the "Richmonds"), and Dubea Investments Kinder, LLC ("Dubea"). For the following reasons, we affirm in part, vacate in part and remand for further proceedings regarding restrictions on the servitude and damages.

## FACTS

On April 17, 2015, Blackjack filed a petition to acquire a right of passage. It had purchased property in Caldwell Parish in June 2014. It stated that this property is an enclosed estate and that it contacted the Richmonds, who own adjoining property, seeking their agreement for a right of passage to the nearest public road, i.e., Louisiana Highway 133. Blackjack proposed a route along the top of the spoil bank of Bayou Lafourche (the "Proposed Route"). It also contacted another adjoining landowner, Graves Place Ventures, LLC, which did not object to the Proposed Route.

On May 27, 2015, the Richmonds filed an answer. They stated that Blackjack's property traditionally used an access route to Cain Hill Road, so they denied the request for a passage across their property. They contended that the Proposed Route would interfere with their use of the property as a camp and asked the trial court to consider this when determining the value of the right of passage. They requested that the trial court dismiss the petition.

On June 26, 2017, Blackjack filed an amended petition to add Dubea as a defendant because it purchased the property previously owned by Graves Place Ventures, LLC. On August 7, 2017, Dubea filed an answer

and requested that the trial court dismiss Blackjack's petition. It stated that Blackjack's property has historically used other access routes.

A pretrial hearing was held on July 19, 2019. The parties agreed to have a survey of the area on the bank of Bayou Lafourche for a right of passage at that location (the "Stipulated Route"). The parties also agreed that the property would be gated. They stated that the issues of restrictions on the servitude and damages would be reserved for trial.

On August 30, 2019, Blackjack wrote to the trial court stating that it informed the Richmonds and Dubea that the right of passage could not be at the Stipulated Route. It alleged that the landscape was not as it appeared in aerial photographs and that the Stipulated Route was not conducive to the construction of a right of passage due to the slope of the land.

A trial was held on December 16, 2019. Victor Page testified that he co-owns Blackjack and acquired the property at issue in 2014. Blackjack purchased its property for recreational use, namely hunting, and hoped to build a cabin and make other improvements, which would require bringing equipment onto the property. Blackjack wished to obtain year-round access to the property and sufficient room to provide utility access to it. He testified that the conveyance did not include an assignment of a right of passage to the property, so Blackjack contacted adjoining property owners in an attempt to obtain a right of passage. He stated that Blackjack was not able to obtain an agreement and that he had not been able to access the property since its purchase. He testified that the nearest public road, i.e., Highway 133, is approximately 1,900 feet from the property. He stated that there is an access road on the north side of the property that connects to Cane Hill Road and that the distance from the property to the road is

2

2.1 miles. He described the Proposed Route as a 30-foot-wide right of passage that crosses properties owned by the Richmonds and Dubea and is located along the top of a spoil bank. He noted that the location around the spoil bank appeared to be subject to flooding, so it would not provide year-round access to the property.

On cross-examination, Page testified that he was not aware the Richmonds intended to build camps on the spoil bank in the same location as the Proposed Route. He opposed the Stipulated Route because it was in a flood plain and he wanted an all-weather road. He was not agreeable to the restrictions proposed by the Richmonds and Dubea as to the time of day Blackjack could use the right of passage, i.e., not during peak hunting hours. However, he understood that Blackjack's use of the right of passage during peak hunting hours would interfere with the Richmonds and Dubea using their properties for hunting. He agreed that when he purchased the property, he knew that it was landlocked and in a flood plain.

Timothy Howell was accepted as an expert in the area of land surveying. He inspected Blackjack's property and the property between it and Highway 133. He prepared a survey plat for the Proposed Route. He noted that there was an existing "woods . . . type" road in this location. He described the elevation in the area and that on average there was a 30-to-40-foot difference from the bottom to the top of the spoil bank and that the area between the spoil bank and Bayou Lafourche was subject to seasonal flooding. He also noted another road to the north of the Blackjack property.

On cross-examination, Howell testified that he was present in court on July 19, 2019, for the stipulation and that he went to the properties with the parties after the hearing. He stated that a 30-foot-wide right of passage

3

would be necessary for the construction and maintenance of the right of passage. He noted that the Proposed Route is on the high ground of the property and agreed that this would be the land where the Richmonds and Dubea would hunt if the rest of the property were flooded. From a land surveyor's perspective, he did not have an opinion on time restrictions.

Gregg Wilbanks was accepted as an expert in general real estate appraisals. He prepared an appraisal in June 2018 based on the Proposed Route and concluded that the value of the right of passage is $2,850 an acre. He noted an existing road from Highway 133 to the Richmonds' property and stated that he did not believe that constructing a road at this location would have any adverse effect on the value of the property.

On cross-examination, Wilbanks testified that he did not consider the Richmonds' desire to construct camps on the property in his appraisal. He stated that the location of the Proposed Route could potentially, but not necessarily, impact the Richmonds' utilization of the property. He was present in court on July 19, 2019, to hear the stipulation and was not asked to prepare another appraisal. He opined that if Blackjack had unfettered access to the right of passage during hunting hours, it would not diminish the value of the Richmonds' and Dubea's intended use of their properties.

Dennis Cassels was accepted as an expert in road construction, including the estimation of materials and labor costs. He inspected the property from Highway 133 to the line of the Blackjack property, including the area between the spoil bank and Bayou Lafourche. He described it as swamp land with a pile of dirt on it and that it was subject to flooding. He stated that the area on top of the spoil bank would be suitable for an all-weather road, but that in its current state, it was not an all-weather road.

4

He explained that grass would have to be removed and dirt brought in before the road could be graveled. He also discussed extending the width of the spoil bank to the east with additional dirt work. He estimated that it would cost approximately $8,000 to do the additional dirt work and to construct an all-weather road at the top of the spoil bank at the location of the existing road, i.e., at the Proposed Route. He stated that it was not feasible to construct a road adjacent to Bayou Lafourche because the base of the road would soften and washout when it flooded. He estimated it would cost a significant amount of money to place riprap to prevent flooding from damaging the integrity of the road. He noted that it would cost approximately $250,000 to $300,000 to build up a six-to-seven-foot road along the bank.

On cross-examination, Cassels agreed that Highway 133 had flooded in the past and that there was no reason to build a road higher than Highway 133. He also agreed that all-weather access does not necessarily mean 365-day-a-year access due to the weather and flooding. He noted that the cost to build the road on the bottom of the bank would be higher than the middle or top because of the removal of timber and additions of ditches and culverts and estimated a cost of $35,000. He also stated that his estimates were based on light-traffic roads.

Blackjack rested, and the Richmonds and Dubea presented their witnesses.

Eddie Carr was accepted as an expert witness in the area of road construction. He inspected the properties to determine if a road should be built at the Proposed Route or the Stipulated Route. He estimated that it would cost $15,000 to build a road along the Stipulated Route. He stated

5

that there was no need to build the road up six or seven feet because if the road flooded, the land it accessed would also be flooded.

On cross-examination, Carr estimated it would cost $90,000 to $95,000 in materials to build up a road. He stated that it would not be reasonable to spend that much to build this road because of the flooding in the area. He did not prepare an estimate to construct a road at the location of the Proposed Route.

A. J. Burns, Jr., was accepted as an expert in the area of general appraisals. He testified that he performed an appraisal of the Richmonds' property and valued the 11-acre property to be worth $3,000 per acre. He estimated that a right of passage at the Proposed Route would reduce the overall value of the property because it would no longer be for the exclusive use of the Richmonds and it would use the location of the Richmonds' hunting lane. He noted that the Proposed Route would effectively split the Richmonds' property, which would diminish its value. He also stated that the Proposed Route would diminish the value of the improvements on the Richmonds' property whether it ran through the middle of the shed or went around the shed. He determined that the Proposed Route would reduce the Richmonds' total land value by 20 percent, with the value of the right of passage at $5.80 a foot.

On cross-examination, Burns explained that he estimated damages of $25,000 to the shed when he appraised the land as if the shed would have to be removed to make the right of passage useful. He stated that the best and most usable part of the Richmonds' property is the location of the Proposed Route.

6

Edward L. Richmond, Jr., testified that his father purchased their property in the late 1950s or early 1960s and that after his parents passed away, he and his four brothers inherited it. At the time of the trial, he, three brothers and several nephews owned the property and used it for hunting. He noted that the property is subject to flooding and that the spoil bank is the only portion of the property where a structure can be built. On the property is a structure that houses campers and that the property has a septic system and electricity. He noted that the area on top of the spoil bank is a hunting lane, not a road. He testified that the Proposed Route would interfere with the utilization of that land for hunting. He discussed reasons for time restrictions on the right of passage, including safety concerns with hunting accidents. He noted that a family member intended to build a camp in the area of the Proposed Route. He explained that his family asked Blackjack to move the right of passage down the bank to the Stipulated Route because this location would not affect their use of the property as much as the location of the Proposed Route. He testified that the traditional access to Blackjack's property was from Cane Hill Road rather than across the Richmonds' property. On cross-examination, he agreed that it is further from the Blackjack property to Cane Hill Road than it is to Highway 133.

Ronald Dean Richmond testified that he uses the property for hunting. He stated that the location of the Proposed Route would impact the family's ability to hunt that area and that the Stipulated Route would allow them to continue to use their land for hunting and to build a camp. He was aware that the properties flood and noted that when Highway 133 floods, the properties can only be accessed by boat. He stated that the traditional access

7

route to Blackjack's property was by Cane Hill Road. He noted that the proposed time restrictions on the servitude were for safety while hunting.

Charles A. Richmond testified that his family uses their property for hunting and that the Proposed Route would interfere with their hunting lane. He believed the time restrictions were reasonable considering that the right of passage would disrupt hunting. He was aware that the area floods and that at times the only way to access the properties is by boat. He stated that if the Stipulated Route flooded, Blackjack's property would also be under water.

Mick Dubea testified that he is the sole member and manager of Dubea and purchased the property at issue in April 2017. He was aware the land in that area floods, and he uses a boat to access his property when it floods. He stated that he primarily uses his property for hunting deer, duck and squirrel and that he has a deer stand and deer feeder in the location of the Proposed Route. He shared the safety concerns expressed by the Richmonds and that someone accessing his property while he was hunting would restrict him from using his property for its purpose. He stated that in July 2019, the parties agreed to the Stipulated Route and was surprised when Blackjack later said it did not want that location. He explained that the Stipulated Route would not restrict his use of the property for hunting to the same extent as the Proposed Route and that he wanted time restrictions at this location during hunting season.

On April 20, 2020, the trial court filed its reasons for judgment. On May 11, 2020, it signed a judgment. It determined that Blackjack's property is an enclosed estate. It granted Blackjack a right of passage for ingress, egress and utilities 30 feet in width beginning at the intersection of the

8

Richmonds' property with Highway 133 and through the Richmonds' property and Dubea's property. It stated that the location of the right of passage was to be as close as possible to the bank of Bayou Lafourche, to be determined by a survey secured by Blackjack and at its expense, with a copy of the survey furnished to the Richmonds and Dubea for review. Absent an objection, the survey would be accepted by the court as the route of the right of passage. It ordered that the utilization of the right of passage be controlled by a gate located at the intersection of the Richmonds' property and Highway 133, that it be constructed at the cost of Blackjack and that Blackjack, the Richmonds and Dubea all have an access code or key to the gate. It restricted Blackjack's use of the right of passage during deer, squirrel and duck hunting seasons so that entry and exit across the right of passage were limited to 45 minutes before sunrise until 10:00 a.m. and from 3:00 p.m. until 30 minutes after sunset. It ordered Blackjack to pay to the Richmonds $1,500 as compensation for the right of passage across their property together with $4,500 for diminution in value of their property. It ordered Blackjack to pay to Dubea $2,500 as compensation for the portion of the right of passage that crosses its property together with the sum of $3,428.70 for the diminution in value of its property.

On July 22, 2020, a survey prepared by Howell was filed in compliance with the trial court's judgment (the "Judgment Survey"). It depicted a 30-foot-wide right of passage adjacent to Bayou Lafourche (the "Judgment Route").

On August 5, 2020, Blackjack filed an objection to the Judgment Survey and the Judgment Route. It stated that the Judgment Route is immediately adjacent to Bayou Lafourche and will be underwater and

9

unusable more than the Proposed Route. It contended that the Proposed Route is the legally correct route because it is accessible year round and is economically feasible and that the Judgment Route is neither of those. It also argued that the Judgment Route may run afoul of state or federal oversight regarding construction on the bank of Bayou Lafourche. As exhibits, it included a chart of water levels from November 2013 to May 2020 and a copy of the schematic for construction of the channel enlargement immediately adjacent to the properties in this case.

On August 12, 2020, Blackjack filed a notice of appeal.

The Richmonds and Dubea both filed responses to the objection and motions to strike the objection's exhibits. They stated that the judgment that determined the location of the right of passage was a final judgment. They contended that the arguments made by Blackjack in its objection were the same arguments it made at trial and that the trial court already considered the evidence and reached a conclusion on these arguments.

A hearing was held on October 7, 2020. On October 19, 2020, the trial court filed a judgment and found that the law and evidence are in favor of the Richmonds and Dubea. It overruled Blackjack's objection to the Judgment Survey and ruled inadmissible Blackjack's exhibits.

Blackjack appeals the May 11, 2020 judgment.

**DISCUSSION**

*Right of Passage*

Blackjack argues that the trial court erred in granting a right of passage that is not suitable for the kind of traffic or utility reasonably necessary for its use of its property. It desires a right of passage that provides all-weather, year-round access. It contends that the Proposed

10

Route is the only appropriate location because it is accessible during flooding and would cost a significant amount less than building an elevated road at the Stipulated/Judgment Route.

The Richmonds argue that the trial court established a right of passage that was suitable for the kind of traffic and utility reasonably necessary for Blackjack's use of its estate. They state that although the location of the Proposed Route would not require as much expenditure by Blackjack, the trial court appropriately weighed that cost with the Richmonds' and Dubea's ability to use the spoil bank in the manner which they intended. They note that all of the land in the area, except the spoil bank, floods, so a road will not be needed to access Blackjack's property when it is under water.

Dubea argues that the trial court correctly found that the interests for the Stipulated/Judgment Route outweighed the interests of the Proposed Route. It contends that the trial court correctly considered the impact that each route would have on the utilization of the properties, i.e., hunting. It also asserts that the Stipulated/Judgment Route is the shortest route to a public road across its property, that Blackjack did not prove that it was economically unfeasible to build a road on the Stipulated/Judgment Route and that access to Blackjack's property in a flood plain does not require an all-weather road.

The owner of an estate that has no access to a public road or utility may claim a right of passage over neighboring property to the nearest public road or utility. La. C.C. art. 689. The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic or utility that is reasonably necessary for the use of that estate. La. C.C. art. 690. The owner of the enclosed estate may construct on the right-of-way the type of road or

11

utility reasonably necessary for the exercise of the servitude. La. C.C. art. 691. The owner of the enclosed estate may not demand the right of passage or the right-of-way for the utility anywhere he chooses. La. C.C. art. 692. The passage generally shall be taken along the shortest route from the enclosed estate to the public road or utility at the location least injurious to the intervening lands. *Id.* The court shall evaluate and determine that the location of the servitude of passage or utility shall not affect the safety of the operations or significantly interfere with the operations of the owner of the servient estate or intervening lands prior to the granting of the servitude of passage or utility. *Id.*

The circumstances of each case will determine the location of the servitude. *Phillips Energy Partners, LLC v. Milton Crow Ltd. P'ship*, 49,791 (La. App. 2 Cir. 5/20/15), 166 So. 3d 428, *writ denied*, 15-1396 (La. 10/2/15), 186 So. 3d 1148. Courts will normally grant a right of passage that is least injurious to the servient estate, but other factors such as distance, degree of injury to the servient estate, practicability and cost weigh in the decision of where to locate the right of passage. *Phillips Energy*, *supra*; *Dickerson v. Coon*, 46,423 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1135. Although the right of passage should be fixed at the point least injurious to the servient estate, the matter of its location is not to be left to the caprice or option of the party who must grant the servitude. *Phillips Energy*, *supra*, *citing Anderton v. Akin*, 493 So. 2d 795 (La. App. 2 Cir. 1986), *writ denied*, 497 So. 2d 1014 (La. 1986). The court must also be mindful of the rights that the law affords the dominant estate owner. *Phillips Energy*, *supra*. A right of passage that is extremely circuitous, impracticable and expensive

should not be selected because it is less burdensome to the servient estate owner. *Id*.

The trial court's factual findings are subject to reversal only if the appellate court finds that no reasonable factual basis exists for the findings of fact and determines that the record establishes that the trial court's findings are manifestly erroneous or clearly wrong. *Phillips Energy*, *supra*; *Dickerson*, *supra*. The appellate court does not determine whether the trier of fact was right or wrong; rather, the issue to be resolved is whether the trier of fact's conclusions are reasonable based on a review of the entire record. *Phillips Energy*, *supra*; *Dickerson*, *supra*. If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, then reversal is not warranted. *Phillips Energy*, *supra*; *Dickerson*, *supra*. This is so even if the appellate court, sitting as the trier of fact, would have weighed the evidence differently. *Phillips Energy*, *supra*; *Dickerson*, *supra*. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Phillips Energy*, *supra*; *Dickerson*, *supra*.

As expressed in its detailed reasons for judgment, the trial court balanced the interests of the parties to determine the location of the right of passage. It considered the traffic and utility reasonability necessary for Blackjack's use of its property. It also considered the operations of the Richmonds' and Dubea's properties and what location would be least injurious to their properties.

The Proposed Route and the Stipulated/Judgment Route are practically the same length, so the trial court did not deviate from the shortest-route requirement. It considered the degree of injury, costs and

13

practicability of the two locations when determining the location of the right of passage. It acknowledged that the Stipulated Route is more expensive and less practical for Blackjack, but that the Proposed Route will burden the Richmonds and Dubea; permanently deprive them of the use of their property for its primary purpose, i.e., hunting; and prevent them from using the best part of their property, i.e., the portion that remains accessible during seasonal flooding. The trial court also noted that as the property was in a flood plain and subject to seasonal flooding, Blackjack could not expect all-weather access to its property. It determined that the degree of injury to the Richmonds and Dubea outweighs the cost and impracticability to Blackjack when considering the type of road reasonably necessary to access hunting land in a flood plain.

The testimony presented at trial emphasized that all parties intended to use their properties for hunting, and the trial court correctly considered this when determining the location of the right of passage. Although Blackjack requested an all-weather, year-round road, it does not have all-weather property. The trial court balanced the interests of all the parties and was not manifestly erroneous in determining that the right of passage be located at the Stipulated/Judgment Route.

Accordingly, this assignment of error lacks merit.

*Stipulation*

Blackjack argues that the trial court erred in ruling that the July 19, 2019 stipulation was a binding and enforceable confession of judgment. It states that although the trial court's ultimate ruling may not have been completely predicated on this erroneous conclusion, it clearly influenced the trial court's decision. It argues that Page was not aware of the extent of the

14

flooding; and, therefore, it entered into the stipulation based on its mistaken belief that a right of passage at the Stipulated Route would provide year-round access to its property. Blackjack contends that this was an error of fact, which permits withdrawal from the stipulation.

The Richmonds argue that the trial court did not err in ruling that the stipulation is a binding and enforceable confession of judgment. They contend that when entering into the stipulation, each party considered Blackjack's desire for a shorter route and the Richmonds' and Dubea's rights to utilize their properties in the manner they originally contemplated. They arrived at trial under the impression that the location of the right of passage had been determined as the Stipulated Route and that the only issues before the court were those of restrictions and damages. In its reliance on the stipulation, they withdrew their contention that Blackjack's property was not an enclosed estate and that Blackjack had other means of ingress and egress, i.e., Cain Hill Road.

Dubea argues that the trial court correctly ruled that the July 19, 2019 stipulation is binding and enforceable as a confession of judgment. It states that the parties agreed that the location of the right of passage would be as close to the bank as possible and that the only issues remaining for trial were restrictions on the servitude and resulting damages. It contends that Blackjack does not deny making the judicial confession and that Blackjack's alleged error of fact is not an error because Page was aware the properties were subject to flooding.

A judicial confession is a declaration made by a party in a judicial proceeding. La. C.C. art. 1853. It constitutes full proof against the party who made it, it is indivisible and it may be revoked only on the ground of

15

error of fact. *Id*. A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. *Collins v. Hill*, 52,457 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1202.

Blackjack has not proved an error of fact. Page's testimony at trial demonstrates that Blackjack was aware its property was subject to seasonal flooding. Further, the trial court did not limit the trial to determining restrictions on the servitude and damages, as agreed to by the parties in the July 19, 2019 stipulation. Rather than accepting the Stipulated Route as the location of the right of passage, the trial court considered all the evidence presented at trial, including Blackjack's Proposed Route, in its determination of the location of the right of passage.

Accordingly, this assignment of error lacks merit.

*Restrictions on the Servitude*

Blackjack argues that the trial court erred in imposing restrictions on its use of the right of passage, which diminishes and makes inconvenient the use of the servitude. It contends that the purpose of the servitude is to provide access from its property to a public road and that any restrictions on this access would be contrary to the civil code and deny it the right of use and enjoyment of the servitude. It states that it does not intend to exercise the servitude in any manner that would disrupt the Richmonds' or Dubea's use of their properties and that it would not cross the properties during peak hunting hours.

The Richmonds argue that the trial court did not err in imposing limitations and restrictions on Blackjack's use of the servitude. They contend that it is reasonable that there would be restrictions on the use of the

16

servitude during peak hunting hours, as all three properties are being used for hunting and recreation.

Dubea argues that the trial court correctly found that reasonable restrictions on access times during hunting season could be imposed on the right of passage. It notes that Page testified that he would not intentionally cross the properties during peak hunting hours and that the trial court noted safety reasons to restrict access.

Restrictions on the use of a servitude may be imposed in establishing the right of passage. *Phillips Energy*, *supra* (where the restriction was a gate). An owner entitled to a right of passage to a public road may be subjected to some inconvenience. *Stuckey v. Collins*, 464 So. 2d 346. (La. App. 2 Cir. 1985) (where the restrictions were a fence and gate).

Most of the evidence presented at trial considered how a right of passage at the Proposed Route would hinder the Richmonds' and Dubea's use of their properties for hunting. The Richmonds and Dubea also raised safety concerns, notably hunting accidents, if the right of passage were located at the Proposed Route.

The same concerns regarding safety and utilization of the properties for hunting were not expressed regarding the Stipulated Route, which is what the Judgment Route follows. Unlike the Proposed Route, the Stipulated/Judgment Route does not run through the hunting lane. Edward L. Richmond testified that his family asked for the right of passage to be located at the Stipulated Route because that location would not affect their use of the property as much as the location of the Proposed Route. Ronald Dean Richmond testified that if the right of passage were located at the Stipulated Route, it would allow his family to continue to use their land for

17

hunting and to build a camp. Similarly, Dubea testified that the Stipulated Route would not restrict his use of the property for hunting to the extent that the Proposed Route would and described the difference between his use of the property for duck and deer hunting. Considering the absence of evidence presented at trial regarding restrictions on a right of passage at the Stipulated/Judgment Route, the trial court was manifestly erroneous in setting the time restrictions on the right of passage at this location.

Accordingly, this assignment of error has merit. We vacate this portion of the judgment and remand to the trial court for a hearing on restrictions at the Judgment Route location.

*Award of Damages*

Blackjack argues that the trial court erred in its award of damages in the absence of evidence to support such awards. It states that the only evidence regarding diminution in value is the testimony of Burns, which was limited to the scenario of the Proposed Route being granted as the right of passage and only applied to the Richmonds' property, not Dubea's property.

The Richmonds argue that the trial court's award of damages was supported by evidence. They contend that although Burns did not estimate the diminution in value at the Stipulated Route, it is reasonable to assume there will be some diminution of value because of the property being used for ingress and egress by Blackjack.

The owner of the enclosed estate is bound to compensate his neighbor for the right of passage acquired and to indemnify his neighbor for the damage he may occasion. La. C.C. art. 689. The burden is on the owner of the servient estate to prove the amount of damage resulting from the servitude of passage. *Phillips Energy*, *supra*; *Dickerson*, *supra*.

18

An appellate court reviews a trial court's general damage award using the abuse of discretion standard. *Coco v. Winston Indus., Inc.*, 341 So. 2d 332 (La. 1976). The effect and weight to be given to expert testimony depends on the underlying facts and rests within the broad discretion of the trial court. *Dickerson*, *supra*.

At trial, the burden was on the Richmonds and Dubea to prove the amount of damages resulting from the servitude of passage across their properties. The Richmonds presented evidence through the testimony of Burns regarding if the right of passage were located at the Proposed Route. Although both the Richmonds and Dubea stated that they relied on the July 19, 2019 stipulation when preparing for trial and, therefore, knew an issue for trial was damages based on the Stipulated Route, neither presented evidence regarding damages that would result from the trial court granting the right of passage at the Stipulated/Judgment Route.

In its reasons for judgment, the trial court noted that no testimony or evidence was presented regarding the value of the land at the location of the Stipulated/Judgment Route or the diminution of value due to Blackjack's use of a right of passage across the Richmonds' and Dubea's properties. It stated that it used numbers presented regarding the Proposed Route and made assumptions and speculations to determine damages.

As the Richmonds and Dubea failed to introduce evidence of damages for a right of passage located at the Stipulated Route, the trial court abused its discretion in awarding damages on the record as it is, i.e., without evidence of the amount of damages. *See Dalton v. Graham*, 53,452 (La. App. 2 Cir. 4/22/20), 295 So. 3d 437, *writ denied*, 20-00740 (La. 10/6/20), 302 So. 3d 535.

Accordingly, this assignment of error has merit, and we vacate the trial court's awarding of damages to the Richmonds and Dubea.

In its reasons for judgment and at the October 7, 2020 hearing on Blackjack's objection, the trial court noted that a remaining issue for its review is to determine damages for the removal of timber for the building of the right of passage at the Judgment/Stipulated Route. Therefore, we remand this case to the trial court for a hearing on the issue of damages resulting from a right of passage at the Judgment Route.

*Blackjack's Objection Exhibits*

Blackjack argues that the trial court erred in refusing to admit into evidence and consider exhibits it offered as part of its objection to the Judgment Survey. It contends that the arguments made in its objection are not the same issues it raised at trial. It argues that its exhibits are relevant because they show detailed information as to the time and extent of flooding at the location of the Judgment Route.

The Richmonds argue that the trial court did not err in its refusal to admit the exhibits. It contends that the issue of whether the Stipulated/Judgment Route was susceptible to flooding was considered and resolved by the stipulation and at trial.

Dubea argues that the trial court correctly held that evidence not presented at trial was inadmissible. It states that it and the Richmonds did not object to the exhibits on the basis of relevancy, but, rather, because the exhibits were not introduced at trial. It contends that by filing the additional exhibits, Blackjack sought to relitigate the findings of the court.

When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record

thereof or permit the party to make a statement setting forth the nature of the evidence. La. C.C.P. art. 1636(A). The court shall state the reason for its ruling as to the inadmissibility of the evidence, and this ruling shall be reviewable on appeal without the necessity of further formality. La. C.C.P. art. 1636(C).

In its judgment, the trial court anticipated a party filing an objection to the Judgment Survey. At the October 7, 2020 hearing on Blackjack's objection, the trial court sustained the Richmonds' and Dubea's motions to strike and explained that Blackjack's exhibits were related to arguments made by it at trial. The trial court did not abuse its discretion when it ruled inadmissible Blackjack's exhibits and gave Blackjack the opportunity to proffer its exhibits. The issues raised by Blackjack in its objection, as supported by its proferred exhibits, were raised at trial and considered by the trial court in its judgment.

Accordingly, this assignment of error lacks merit.

### CONCLUSION

For the foregoing reasons, we affirm the judgment in part as to the location of the right of passage, vacate the judgment in part as to restrictions on the servitude and damages, and remand for further proceedings consistent with this opinion. Costs of this appeal are assessed equally between Plaintiff-Appellant Blackjack Farms, L.L.C., and Defendants-Appellees Edward L. Richmond, et al., and Dubea Investments Kinder, LLC.

**AFFIRMED IN PART; VACATED IN PART; REMANDED FOR FURTHER PROCEEDINGS.**