Judgment rendered April 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,452-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

RALPH JOE DALTON, ET AL.                    Plaintiffs-Appellees

versus

ALAN GRAHAM, ET AL.                         Defendants-Appellants

* * * * *

Appealed from the
42nd Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 79667

Honorable Amy Buford McCartney, Judge

* * * * *

SHUEY SMITH LLC                             Counsel for Appellants
By: Richard E. Hiller

BETHARD & BETHARD, L.L.P.                    Counsel for Appellees
By: Benjamin T. Bethard

BRENDA F. FORD

* * * * *

Before PITMAN, GARRETT, and STONE, JJ.

**STONE, J.**

## FACTS AND PROCEDURAL HISTORY

The Daltons (the "plaintiffs") own a tract of land which is not accessible by any public road. Pursuant to La. C.C. art. 689 *et seq.,* they brought suit against the owners of a neighboring tract (the "Brown tract") demanding a servitude of passage. There are two groups of co-owners of the Brown tract; in this opinion, we refer to them as the "Graham defendants"[1] and the "Johns defendants."[2] Only the Graham defendants have appealed.

The trial court awarded the plaintiffs a servitude of passage along the southern boundary of the Brown tract (the "southern boundary route"), and authorized the plaintiffs to build a road there. The trial court also denied the appellants' claim for damages for the clearing of timber that will be necessary for constructing the road.

The appellants assign three errors: (1) the trial court erred in failing to consider instead granting passage along the "Hall tract," which adjoins the Brown tract along its southern boundary; (2) the trial court erred in not considering splitting the width of the servitude equally between the Hall tract and the Brown tract; and (3) the trial court erred in denying the appellants' claim for damages resulting from the clearing of their timber to make way for the new road.

---

[1] Alan Graham; Cleo Graham Jones; Curtis Graham; Brenda Graham; Narcissus Mills; Betty Lindsay; Angus Lindsay; Eddie Lindsay; Alvin Lindsay; Willie B Lindsay; Charles Lee Wilson; Iona Brown Mayweather; Cesar Graham Junior; Ruby Jean Graham; Hearese Graham Moore; Claude L Graham; Leroy Graham; Alisa Graham Johnson; Lee Jay Lindsay; Mary Gowans; Elisha Graham, Jr.

[2] Emma Brown Douglas; Ronnie Wayne Johns; Glenda F Johns; Lowrane Johns; Willie Fred Johns.

## DISCUSSION

In a suit for a right of passage for an enclosed estate, the trial court's factual findings are subject to manifest error review. *Dickerson v. Coon*, 46, 423 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1135. Thus, the appellate court may reverse the trial court's factual finding only if: (1) there is no reasonable evidentiary basis for the finding, and (2) the record as a whole establishes that the finding is clearly wrong. On manifest error review, the issue is whether the factfinder's conclusion was reasonable based on the entire record. *Id.*

La. C.C. art. 689, in pertinent part, provides:

> The owner of an estate that has no access to a public road…may claim a right of passage over neighboring property to the nearest public road... He is bound to compensate his neighbor for the right of passage acquired and to indemnify his neighbor for the damage he may occasion.

"The right of passage for the benefit of an enclosed the state shall be suitable for the kind of traffic…that is reasonably necessary for the use of the estate." La. C.C. art. 690.

Regarding the location of the passage, La. C.C. art. 692 provides: "[t]he passage *generally* shall be taken along the shortest route from the enclosed estate to the public road…at the location least injurious to the intervening lands." (Emphasis added). However, our jurisprudence has held that "proper regard should [also] be given to the interest of the parties claiming the right of way." *Pittman v. Marshall,* 104 So. 2d 230 (La. App. 2 Cir. 1958). The legislature's "use of the word 'generally' [in La. C.C. art. 692 further indicates that] there are situations that allow the right of passage to be imposed on an estate that does not provide the shortest route." *Corley v. C & J Frye Properties, LLC*, 49,969 (La. App. 2 Cir. 8/19/15), 176 So. 3d 439, 443, *writ denied,* 2015-1887 (La. 11/20/15),

2

180 So. 3d 318. Thus, the location of the servitude depends on the circumstances of each case. However, the trial court may not depart from the general rule absent "weighty considerations." *Corley, supra.*

The jurisprudence has recognized two exceptions to the general rule: (1) when the estate which provides the shortest route is covered by water or otherwise not accessible year-round; and (2) when costs associated with crossing the estate which is the shortest distance from the public road are so exceptional that from a practical standpoint it is economically unfeasible to build. *Philips Energy Partners, LLC v. Milton Crow Ltd. Partnership,* 49, 791 (La. App. 2 Cir. 5/20/15), 166 So. 3d 428, 434. "The party arguing that the servitude should instead be imposed on another estate bears the burden of establishing that one of the two exceptions is applicable." *Id.*

Upon determining which estate will be burdened with the right of passage, courts usually engage in a balancing test to determine where on the servient estate the right of passage should be located." *Dickerson, supra.*

The fixing of a servitude of passage for an estate without access to a public road may require a court to determine whether a road, or a part of a road, is private or public. In that regard, La. R.S. 48: 491(B) pertinently provides:

> B. (1)(a) All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.
> …
> (c) Actual or constructive knowledge is conclusively presumed within all parishes and municipalities…if the total period of such maintenance is four years or more, unless prior thereto and within sixty days of such actual or constructive knowledge, the

3

prescription is interrupted or suspended in any manner provided by law.

A road becoming subject to public use by operation of this statutory provision is referred to as a "tacit dedication" in the Louisiana jurisprudence. *Cenac v. Public Access Water Rights Ass'n,* 2002-2660 (La. 6/27/03), 851 So.2d 1006.

**Assignment of error no. 1: The Hall Route.** The appellants argue that the trial court erred in not considering granting the right of passage over the Hall tract, which borders both the Brown tract and the Dalton tract to the south. Most of this proposed route would be adjacent and parallel to the southern boundary route, *supra.* The only difference between this portion of the Hall route and the southern boundary route is that the former would run along the northern boundary of the Hall property, while the latter runs along the southern boundary of the Brown property, i.e., exactly the same except for whether it would run on the Hall side of the boundary or the Brown side of the boundary.

The issue regarding this assignment of error does not involve the portion of the Hall route described in the preceding paragraph. Instead, the issue regards only the part of the Hall Route that diverges from the Southern Boundary Route. The appellants contend that the public portion of Brown Road terminates along the northeastern boundary of the Hall property*, i.e.,* that the public portion of Brown Road does not go all the way to the gate entering Brown property (the "Brown gate"). In other words, the appellants contend that the Brown gate is not on their property line, but instead, is a significant distance *inside* their property line, and, therefore, the meeting point of public Brown Road and private Brown Road is not at their gate, but instead, at their property line. From that premise, the appellants conclude that the length of the southern boundary route includes the

distance between the Brown gate and the Brown property line, and is thus longer than the Hall route.

The trial court did not adopt the appellants' version of where public Brown Road terminates. Phillip Clark, the roads superintendent for Desoto Parish, testified that the parish maintains Brown Road all the way to the Brown gate, and has done so for at least the last 10 years. Essentially, if a parish or municipal government maintains or works on a road within its jurisdiction for a total of 4 or more years, the road thereby becomes subject to public use. La. R.S. 48: 491(B)(1)(a) & (c), *supra*. As previously mentioned, this is known as "tacit dedication" in the Louisiana jurisprudence. *Cenac, supra.* There is an exception to this rule relating to interruption or suspension of prescription, but this exception is not implicated by the evidence in the record.

The trial court did not explicitly find that the subject portion of Brown Road became public through tacit dedication, but nonetheless found it to be public. Even if the appellant's factual premise outlined in the preceding paragraph is correct, Phillip Clark's testimony provided the trial court had a reasonable evidentiary basis to determine that the subject portion of Brown Road is public via tacit dedication to public use under La. R.S. 48: 491(B). The trial court's factual finding that the public portion of Brown Road extends all the way to the Brown gate, and therefore, the Brown tract provides the shortest route, was not manifestly erroneous. The appellants' contention that the Hall Route is shorter than the Southern Boundary Route lacks merit.

**Assignment of error no. 2: The Hall/Southern Boundary Route.** The appellants also contend that the trial court erred in not considering what this Court has termed the "Hall/Southern Boundary Route." This route, instead of moving the whole servitude (as embodied by the southern boundary route) southward

onto Hall property, would move only one-half of the servitude southward onto Hall property, thereby splitting the servitude's width equally along the Hall/Brown property line. Citing La. C.C. art. 692, the appellants contend that this would be "least injurious" to the intervening lands, because the Hall tract in the Brown tract would then equally share the burden of the servitude of passage.

This argument is erroneous. "The passage generally shall be taken along the shortest route from the enclosed estate to the public road… at the location least injurious to intervening lands." La. C.C. art. 692. The jurisprudence dictates a two-step analysis in applying this language from La. C.C. art. 692. First, the court is to determine which intervening estate will be burdened with the servitude – that is, which estate will be the servient estate. Once that determination is made, the court is to determine where *on the servient estate* the servitude will be located. *Dickerson, supra,* at 1139. This determination under the second step of the analysis does not require the court to consider moving the servitude, in whole or in part, onto another estate. Such a requirement would confound the analytical framework established by the jurisprudence.

Additionally, the trial testimony indicates that a fence now exists on or near this property line. If the servitude were constructed on the Hall/Southern Boundary Route, the fence would have to be removed, or moved to one side of the servitude, thereby depriving one of the servient estates of full accessibility. The trial court did not commit error in rejecting the Hall/Southern Boundary Route.

**Assignment of error no. 3: Denial of the defendants' claim for damages to timber.** The owner of the dominant estate "is bound to compensate his neighbor for the right of passage acquired and to indemnify his neighbor for the damage he may occasion." La. C.C. art. 689. The evidence at trial established

6

that construction of the servitude along the southern boundary route will require clearing of timber on the defendants' property. However, the trial court denied the defendants' claim on the ground that they failed to introduce any evidence regarding the *amount* of money damages that would result from clearing the timber. Our review of the record confirms that the defendants did not introduce any such evidence. Thus, unfortunately, the trial court reached the only possible correct conclusion. Had the defense introduced, for example, an appraisal of the timber located on the Southern Boundary Route, the trial court would then have had an evidentiary basis for quantifying damages, and could have awarded damages to the defendants. Conversely, had the trial court awarded damages on the record as it is, *i.e.*, without evidence of the amount of damages, it would have been manifest error.

In brief, the defense contends that the southern boundary route was first mentioned midtrial, and therefore this court should remand to give the defense an opportunity (more accurately, *another* opportunity) to introduce evidence of the amount of damages that will be caused by the clearing of the timber for the southern boundary route. Indeed, the record indicates that it was defense counsel Mr. Hiller himself who first raised the idea of the southern boundary route at trial, and that he did not request a continuance so proof of the value of the timber could later be admitted. We are constrained to reject this assignment of error. Because of the failure to introduce evidence of the amount of damages, the trial court reached the only possible correct conclusion in denying the defendant's claim for damages.

7

## CONCLUSION

The trial court's judgment is affirmed. Costs of this appeal are taxed to the appellants.

**AFFIRMED.**