399 So.2d 1238 (1981)
Pearl HUTCHISON, Plaintiff-Appellee,
v.
James Dalton JACKSON, Defendant-Appellant.
No. 8199.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1981.
Rehearing Denied July 8, 1981.
*1239 Lowther & Boone, Robert C. Lowther, Leesville, for defendant-appellant.
Watson, Murchison, Crews, Arthur & Corkern, R. Raymond Arthur, Natchitoches, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and LABORDE, JJ.
DOMENGEAUX, Judge.
The defendant, James Dalton Jackson, is the owner of an enclosed estate. To get to the nearest public road from his property, defendant crosses the property of Pearl Hutchison, who sued to enjoin defendant from crossing her (plaintiff's) land for such purpose. Thereafter, defendant filed an answer and reconventional demand asking for a servitude of passage across plaintiff's property. Following trial of the demands, judgment was rendered on September 12, 1980. Therein, the trial court found that defendant was entitled to a servitude of passage across plaintiff's land under La.C.C. Art. 689 and granted him a right-of-way 40 feet wide and 628 feet in length (25,120 square feet). The court found the value of the servitude to be $5,446.40 and condemned defendant to pay plaintiff that amount plus costs, including $250.00 in expert witness fees and legal interest on $5,446.40 from the date plaintiff filed suit. Defendant has appealed and contends the amount awarded by the court was excessive. The proper value of the servitude is the only issue remaining on appeal.
The property comprising the servitude of passage is an existing but privately owned roadway located in Pendleton Estates (plaintiff's property), an unimproved tract of land abutting the Toledo Bend Reservoir about 17 miles west of Many, Louisiana. Two expert appraisers offered their opinions as to the value of the 25,120 square foot right-of-way.
Mr. C. G. Bullard, who testified for plaintiff, believed the 402 feet (16,080 square feet) nearest the Toledo Bend Reservoir was worth 25 cents per square foot and that the other 226 feet (9,040 square feet) was worth 16 cents per square foot.[1] Mr. C. R. Ammons, defendant's appraiser, assigned a value of $500.00 to the entire right-of-way tract but thought the property would be difficult to sell at any price. The trial court explained why he accepted Mr. Bullard's appraisal over the one offered by Mr. Ammons:[2]
"Having considered all the evidence of the amount of damages due plaintiff for the imposition of the servitude upon her property, I conclude that she is entitled to Five Thousand Four Hundred Forty-Six and 40/100 ($5,446.40) Dollars for those damages. This is the amount arrived at by Mr. C. G. Bullard, plaintiff's appraiser. Although defendant's appraiser, Mr. C. R. Ammons, arrived at a lesser amount, I do not find that his appraisal result is supported by the evidence. From his testimony, *1240 it appears that he did not consider the value of the subject property as part of the adjacent lots of the proposed subdivision. Since the subject property has not been dedicated to the public or otherwise made a public road or street, it is available for sale as part of the adjacent lots. As part of those lots, it would obviously have more value than it would have if it were offered as a separate lot, forty (40) feet wide. It is not likely that the subject property would be offered for sale as a separate lot for the reason that the forty (40) foot width of the lot would eliminate it from consideration as a residential building site, which is the highest and best use of property in this vicinity.
An additional reason for considering the subject property as part of the adjacent residential property, is the apparent necessity for re-locating Oak Ridge Drive from its present proposed location in order that the proposed subdivision lots meet the minimum size and square foot requirements of the Sabine Parish subdivision regulations. If the proposed Oak Ridge Drive were re-located, as suggested by Mr. Bullard, the subject property would become part of the proposed shoreline lots, which are more valuable than lots without shoreline frontage. Since the existing roadway on the subject property has neither been dedicated to public use nor otherwise acquired by the public or the defendant, plaintiff would be free to include the subject property in the proposed shoreline lots, except for the necessity of providing a servitude of passage to defendant's property. Although the parties have stipulated that the location of the servitude shall be the present location of the proposed Oak Ridge Drive, that stipulation does not preclude consideration of plaintiff's loss of the subject property for sale as part of adjacent residential lots. Moreover, the increased value of the subject property, resulting from its consideration as part of adjacent residential lots is probably offset by the cost to the defendant of constructing a road at another servitude location. The present location gives him the benefit of road construction and work, provided him without charge, by the Police Jury, prior to the Jury's termination of work on the existing road.
The fact that Mr. Bullard considered recent sales of subdivision lots near the subject property does not detract from his appraisal result. Although these nearby subdivision lots may have been more fully developed than the subject property, he made allowances for this difference in his appraisal. The values per square foot he arrived at for the subject property are less than the price per square foot in all the sales of subdivision lots he used as comparables. Furthermore, the square foot values for the subject property, arrived at by Mr. Bullard, do not exceed the price per square foot plaintiff received April 14, 1979 for a lot, adjacent to the subject property.
In assessing the weight to be given Mr. Ammons' appraisal, the fact that he is obligated to pay for the cost of the servitude, at least up to Five Thousand and 00/100 ($5,000.00) Dollars, cannot be ignored. The amount of his liability on that obligation is fixed by the amount of damages assess herein. Therefore, he has a direct, financial interest in the outcome of this litigation. It is reasonable to conclude that his financial interest in this case has affected or influenced his appraisal of the subject property and accounts, at least in part, for the substantial difference in the amount of his appraisal and that of Mr. Bullard."[3]
For the reasons given by the trial judge, we do not believe he erred in accepting as the pre-taking value of the land within the servitude the value assigned by plaintiff's expert appraiser.
Defendant last argues that the court erred in valuing the servitude of passage as though it were a complete alienation of the land involved. We think defendant's argument has merit.
*1241 The record establishes that Mr. Bullard calculated only the pre-taking value of the land comprising the servitude. He did not indicate whether or not plaintiff's residual rights over the property have any value. It is evident from a reading of the following portion of the court's opinion, though, that the district judge believed plaintiff's residual rights are worthless:
"I see no reasonable or fair alternative to compensating plaintiff for the fair market value of the subject property. As a practical matter, the property will no longer be fit or suited for any purpose or use other than as a road. Her use of the road will be minimal. The property will no longer be available for sale by plaintiff to others as part of a residential lot. On the other hand, she is receiving no more than she would receive if the subject property were available for residential sale. No measure of value other than the fair market value approach has been shown to be applicable to the subject property. Therefore, plaintiff is entitled to the fair market value of the subject property as indemnification for the imposition of the servitude. That value, as stated previously, is the sum of Five Thousand, Four Hundred Forty-Six and 40/100 ($5,446.40) Dollars."
Accordingly, the court awarded as damages an amount equal to the full market value of the property within the servitude.
We are aware that the trial judge has wide discretion in determining the amount of damages occasioned by the party on whose estate the right of passage is fixed. Collins v. Reed, 316 So.2d 134 (La. App. 3rd Cir. 1975), writ refused 319 So.2d 444 (La.1975). But we stated in Louisiana Resources Company v. Langlinais, 383 So.2d 1356 (La.App. 3rd Cir. 1980), that absent some extraordinary circumstances, the value of a servitude taken is not the same as the full market value of the land. No such circumstance exists in this case.
Although the servitude property may be used for no purpose other than as a road, plaintiff retains certain rights over the servitude property: Plaintiff retains the unfettered use of the roadway to portions of her property within Pendleton Estates which would otherwise be isolated and unreachable; she alone enjoys the right to dedicate the road to public use at some future date, if she should desire to do so; and she may extend the use of the same road to her own vendees, two of whom we note purchased enclosed estates from plaintiff near defendant's own enclosed estate. In fact, these two other enclosed estates also adjoin the privately owned portion of Oak Ridge Drive.[4]
Since the plaintiff retains certain rights over the servitude property, the trial court erred in ordering defendant to pay the full market value of the property. Although plaintiff's residual rights over the property are limited, we believe these rights are worth 10% of the total value of the servitude property. Accordingly, plaintiff's recovery of damages is limited to 90% of the value, or $4,901.76. See Louisiana Resources Company v. Langlinais, supra; Greater Baton Rouge Airport District v. Hays, 339 So.2d 431 (La.App. 1st Cir. 1976), writ denied 341 So.2d 403 (La.1977); and State, Dept. of Highways v. Ronaldson, 316 So.2d 898 (La.App. 1st Cir. 1975) for similar results.
For the above reasons, the judgment of the district court against the defendant, James Dalton Jackson, in the amount of $5,446.40 is hereby amended and reduced to $4,901.76. As amended, the judgment is affirmed. Costs of this appeal are assessed one-fourth to the plaintiff, Pearl Hutchison, and three-fourths to the defendant, James Dalton Jackson.
AMENDED AND AFFIRMED.
NOTES
[1] Mr. Bullard based his valuation on the assumption that the right-of-way width was fifty feet rather than forty feet. The court apparently reduced the values assigned by Mr. Bullard in his report to correspond with the narrower width. According to our calculations, these values (16,080 sq. ft. @ $.25/sq. ft. and 9,040 sq. ft. @ $.16/sq. ft.) when combined yield a total of $5,466.40 rather than $5,446.40. Neither party questions this slight error, though, so we will not disturb the court's finding that the value of the property within the servitude was $5,446.40.
[2] All references to the record have been deleted.
[3] The evidence shows that Mr. Ammons sold defendant the enclosed estate but promised to pay up to $5,000.00 to secure a right-of-way for defendant.
[4] The private road connects with Oak Ridge Drive, a publicly maintained road.