Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,129-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DAVID RAY ROBERTSON AND             Plaintiffs-Appellees
RHODA HUTCHINSON
ROBERTSON

versus

RICKIE REESE ARLEDGE AND            Defendants-Appellants
KIMBERLY KIRKLAND
ARLEDGE

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of East Carroll, Louisiana
Trial Court No. 22915

Honorable Michael E. Lancaster, Judge

* * * * *

RAYMOND LEE CANNON, L.L.C.            Counsel for Appellants
By: Raymond Lee Cannon

COTTON, BOLTON, HOYCHICK &            Counsel for Appellees,
DOUGHTY, L.L.P.                       David Ray Robertson and
By: M. Kyle Moore                     Rhoda Hutchinson
                                      Robertson

LISKOW & LEWIS, APLC                  Counsel for Defendant/
By: Matthew David Simone              Appellee, Trunkline Gas
                                      Company, LLC

* * * * *

Before PITMAN, GARRETT, and THOMPSON, JJ.

**GARRETT, J.**

The defendants, Rickie Reese Arledge and Kimberly Kirkland Arledge, appeal from portions of a trial court judgment that granted a permanent servitude of passage to the plaintiffs, David Ray Robertson and Rhoda Hutchinson Robertson, across a small section of the Arledges' property, while denying the Arledges' reconventional demand for a servitude of their own through the front gate of property owned by the Robertsons. The Robertsons answer the appeal, asserting that the trial court erred in ordering them to pay a total of $54,000 to the Arledges. We reverse and vacate the $50,000 portion of the monetary award, amend the total award to $4,000, and, in all other respects, affirm the trial court judgment.

## FACTS

The Robertsons and the Arledges own neighboring tracts of land in East Carroll Parish which were originally part of the Deborah Plantation. The Robertsons bought the 47-acre tract at issue here from their son in 2016. It is bordered on the west by Bayou Macon and on the east and south sides by property owned by the Arledges; it does not have access to a public road. The Robertsons, as sole members of Black Gold Production Services, LLC ("Black Gold"), own another adjoining property known as "Deborah Farms," which was also part of the Deborah Plantation.[1] The north side of Deborah Farms is bordered by the south side of the Arledge property while its south side is bordered by Louisiana Highway 134. The Arledges acquired their property, which consists of about 440 acres, in 1993; it is

---

[1] Mr. Robertson's testimony indicates that he and his wife own all of the original Deborah Plantation property except for the 440 acres owned by the Arledges.

At various points in the proceedings, the names "Deborah Plantation" and "Deborah Farms" appeared to be used interchangeably.

frequently referred to in the appellate record as "the 440." It is surrounded on the east, west, and south sides by property owned by the Robertsons, while the Crow farm is on its north border. The Arledges and their family members have established deer stands, duck ponds, and hunting sites on their property, as well as farm crops and a crawfish farm.

The 47-acre tract purchased by the Robertsons was accepted into the Wetlands Reserve Program ("WRP"); however, its final acceptance hinged on the property having written legal access. The Arledges declined to sell the Robertsons a strip of land required to access the property.

On June 18, 2018, the Robertsons filed suit against the Arledges, seeking a servitude of passage to their enclosed estate, pursuant to La. C.C. art. 689, et seq.[2] They sought access to the other property they owned on the south side of the Arledge property as this property had access to a public road. They alleged that the shortest route to their property from Deborah Farms that was least injurious to the Arledge property would be a 30-foot right-of-way along the westernmost border of the Arledge property. The Robertsons asserted that a portion of the requested servitude, which would affect a total of 0.78 acres, would utilize an existing right-of-way road already on the Arledge property. This road was established by Trunkline Gas Company ("Trunkline").

The Trunkline Road runs along the boundary between the Arledge property and Deborah Farms. Then, at the east end of that boundary, it proceeds south, through Deborah Farms, to Highway 134. The record also suggests that, at the west end of that boundary, the road curves south a short

_____

[2] In their petition, the Robertsons specifically pled that they were the sole members of Black Gold and, as such, own Deborah Farms.

2

distance onto the Deborah Farms property. In August 2018, the Arledges filed a peremptory exception of nonjoinder of parties needed for just adjudication due to the Robertsons' failure to include Trunkline as a party. Consequently, the Robertsons added Trunkline as a defendant in their first supplemental and amended petition for servitude in September 2018. Attached to this petition was an exhibit showing the proposed eastbound route on the Trunkline Road known in the proceedings as "Option 1."

Trunkline filed an answer in November 2018. Later that same month, the Arledges filed an answer, reconventional demand, and peremptory exceptions of no right of action and no cause of action. Therein they asserted that the route sought by the Robertsons was not the shortest access to a public road and that it would disturb and cause permanent damage to their established deer stands, hunting sites, and crawfish farm. They suggested another route which involved Parish Road 6611 and the 80-foot parish right-of-way less than a mile east of the Robertsons' property (referred to as "Option 3" in the proceedings.) In the event that the court granted the Robertsons a servitude at their requested location, the Arledges requested that they be granted a permanent servitude in their own favor along the Trunkline Road, over neighboring Deborah Plantation and through its main gate, to Highway 134.

In December 2018, the Robertsons responded to the reconventional demand with an answer and a peremptory exception of partial no cause of action. They pointed out that the Arledges failed to allege in their reconventional demand that their property was enclosed with no access to a public road when they requested a servitude. After a hearing on March 14, 2019, the trial court denied the Arledges' exceptions of no cause and no

3

right of action, while granting the Robertsons' exception of partial no cause of action. The Arledges were given 10 days to file a reconventional demand to state a cause of action.

The Arledges filed a first amended reconventional demand on March 22, 2019, in which they asserted that their property was enclosed by the Robertsons' property. They claimed that the nearest public road, Parish Road 6611, and the 80-foot right-of-way connecting to it, have a history of flooding from October to March, and the flooding makes otherwise passable ways impassable. In the alternative, they argued that, if the Robertsons got their requested servitude, then they requested one over Deborah Plantation to Highway 134. They reiterated their assertion that, if the Robertsons were entitled to a servitude, it should be Parish Road 6611 through the parish right-of-way and further stated that it should be used only for purposes specified by the WRP but not for hunting.

In their April 2019 answer to the first amended reconventional demand, the Robertsons asserted that the Arledges already had a legal right of passage to a public road (i.e., Parish Road 6611) and thus their property was not an enclosed estate. In February 2020, the Arledges filed a motion for summary judgment contending that they had an enclosed estate. The motion was denied in June 2020.

On July 15, 2020, Trunkline was dismissed from the suit pursuant to a consent motion to dismiss. A bench trial was held on July 20 and 21, 2020. The Robertsons presented the testimony of Jeff Messinger, a licensed land surveyor, and Elliott Colvin, a farmer and dirt contractor for Northeast Dirt Works, LLC. Messinger prepared a plat showing the three right-of-way options under consideration. They were: Option 1, which contained 4.451

4

acres and allowed travel in an easterly direction from the southern border of the Robertsons' 47 acres along the Trunkline Road; Option 2, a much shorter route containing 0.78 acres on the west side of the Arledges' 440 acres, which connected to the Deborah Farms property owned by the Robertsons and thus gave access to Highway 134; and Option 3, which contained 3.496 acres, and went 5,077 feet east across the north boundary of the 440 to an 80-foot parish right-of-way, and then connected with Parish Road 6611. Colvin provided estimates for the right-of-way road constructions[3] that would be required for Option 2 ($9,041)[4] and Option 3 ($63,687.75). Lea Bass Creech testified as an expert real estate appraiser on behalf of the Robertsons. In her market analysis appraisal, she came across similar property priced at $3,000 to $4,278 per acre. She ultimately concluded that $4,000 per acre would be the value of the right-of-way tracts. Mr. Robertson testified about the problems he had had with the Arledges, especially over their past use of the Trunkline Road through the front gate of Deborah Farms. He stated that Option 2 would be the least injurious route for the Arledge property, as well as the shortest and least expensive.

Several members of the Arledge family testified. They included the defendants, Rickie ("Mr. Arledge") and Kimberly; their sons, Rickie Jr. and Hardy; and Hardy's 15-year-old son, Owen. They discussed their farming of

---

[3] Both Option 1 and Option 2 required construction of a 30-foot right-of-way 723.39 feet long from the southern border of the Robertsons' 47-acre tract south to the Trunkline Road. Option 1 then went to the east along the Trunkline Road, while Option 2 went southwest before curving southeast.

Option 3 required the construction of a 30-foot right-of-way for 5,077 feet along the Arledges' northern border, connecting to an already existing 80-foot right-of-way which, in turn, would link up to Parish Road 6611.

[4] This amount also included the dirt work for Option 1, which primarily involved an already existing road.

the 440 property, Rickie Jr.'s crawfish farm, and their extensive hunting on the property. Kendall Crow, the president of the East Carroll Parish Police Jury, testified about the condition of Parish Road 6611 and the 80-foot right-of-way and the parish's upkeep of them. A proffer was made of the testimony of the Arledges' expert, Don Lockard, a general certified real estate appraiser. He explained in the proffer that he was not able to prepare his appraisals for a variety of reasons, including the COVID-19 lockdown and not seeing the legal descriptions of the three proposed options until the first day of trial. The trial court excluded his testimony because the letter received from him during the trial contained no useful information and any amounts that might have been offered at trial would not comply with the scheduling order. The Arledges also made proffers of the testimony of two East Carroll deputies about incidents that occurred on the properties, which the trial court ruled were irrelevant to the issues of whether the Robertson property was enclosed or what indemnity might be owed.

On rebuttal to the reconventional demand, Mr. Robertson testified again. He reiterated that the shortest route was Option 2. Testimony about the usage and conditions of the existing roads that provided the Arledges access to their property was given by Dusty Myers, who was leasing Deborah Farms, and Jimmy Myers, who was retired and lived on Deborah Farms.

Following submission of posttrial briefs, the trial court issued lengthy written reasons for judgment on November 9, 2020. It ruled in favor of the Robertsons on the main demand and granted them a permanent servitude utilizing Option 2. It noted that the parties agreed that the Robertsons' 47-acre tract was an enclosed estate under La. C.C. art. 689. Of the three

6

options, the trial court concluded that Option 2 was the shortest and least injurious route under La. C.C. art. 692. It would affect the least amount of the Arledge property and would interfere with the use of only two of the Arledges' many existing deer stands. The court found that it was sufficiently distanced from the Arledges' commercial crawfish pond and duck ponds so as not to adversely affect those operations or any of their other farming activities. As to the compensation due to the Arledges for the right of passage and to indemnify them for the damage occasioned by the passageway, the trial court awarded a total of $54,000. The trial court reasoned that $4,000 was appropriate for the value of the land upon which the servitude was granted, based upon Creech's analysis, which was the only evidence in the record about monetary values. The trial court then reasoned that $50,000 was "a fair indemnity value" in view of the Arledges' love of deer hunting and the loss of use of two deer stands in perpetuity.

As to the reconventional demand, the trial court found that the servitude requested by the Arledges was originally predicated on the Robertsons being granted a servitude under Option 1. The trial court detailed the history of the Arledges' prior use of the Trunkline Road on the Deborah Plantation property to access Highway 134, including a prior agreement between the parties which was cancelled by the Robertsons due to animosities that included an Arledge relative allegedly shooting at a Robertson employee. The trial court found that La. C.C. art. 694, which pertains to gratuitous servitudes, was inapplicable to the instant case. As to La. C.C. art. 689, the Arledges were required to prove that their property was enclosed. When they purchased it, their deed gave them an 80-foot right-of-way from their northeast corner to Parish Road 6611. Thus, they

7

had access to a public road. However, they now claimed in this litigation that Parish Road 6611 was not passable year-round. In light of conflicting testimony about whether Parish Road 6611 was impassable and the fact that the Arledges put forth Option 3, which relied upon the use of that road, as a solution to the Robertsons' access issue, the trial court concluded that the Arledge property was not an enclosed estate.[5] Accordingly, the reconventional demand was dismissed.

Judgment was signed on November 9, 2020, granting the permanent servitude to the Robertsons and ordering them to pay the Arledges $54,000, while dismissing the Arledges' reconventional demand with prejudice. All court costs, including expert witness fees, were assessed against the Arledges. On November 20, 2020, the Arledges filed a motion for new trial, which was denied on November 24, 2020.

The Arledges appeal. They do not contest the trial court's selection of Option 2 as the location for the servitude of passage granted to the Robertsons. The Arledges' assignments of error challenge the trial court's rulings that: (1) the Arledges made an adverse judicial admission; (2) the Arledge property was not an enclosed estate; (3) La. C.C. art. 694 was inapplicable; (4) excluded the Arledges' expert witness from testifying; (5) denied the Arledges' motion for summary judgment; and (6) the amount of $54,000 was adequate compensation for the Arledges. The Arledges claim the award should be increased to $120,000. They also contend that the trial

---

[5] In its opinion, the trial court stated that, when given the opportunity to withdraw Option 3 as a solution to the Robertsons' enclosed estate status, Arledge refused. The court considered that a judicial admission that Parish Road 6611 is a public road providing suitable passageway, as contemplated by La. C.C. art. 689.

court should have dismissed the plaintiffs' petition for failure to join necessary parties.

The Robertsons answered the appeal, asserting that the award of $54,000 was not supported by the evidence.[6]

## JOINDER OF PARTIES

The Arledges contend that the trial court erred in not dismissing the Robertsons' claim for a servitude of passage for failure to join the owners over whose property the servitude would traverse. Specifically, they contend that Black Gold, the entity that owns Deborah Farms, and Dusty Myers, who leases Deborah Farms from Black Gold, should have been made parties to the instant suit.[7] As a result, they assert the adjudication below is an absolute nullity.

The joinder of parties needed for just adjudication is addressed in La. C.C.P. art. 641, which states:

A person shall be joined as a party in the action when either:

(1) In his absence complete relief cannot be accorded among those already parties.

(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:

(a) As a practical matter, impair or impede his ability to protect that interest.

(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

---

[6] Another issue raised by the Robertsons in their answer to the appeal, which pertained to an expert witness fee, was not briefed and, consequently, is deemed abandoned.

[7] The Arledges did not file a peremptory exception of nonjoinder of parties below on this issue. They did file one urging that Trunkline should have been made a party, which apparently prompted the Robertsons to add Trunkline as a defendant in their first supplemental and amended petition for servitude.

The failure to join a party to an action may be pleaded in the peremptory exception, or may be noticed by the trial or appellate court on its own motion. See La. C.C.P. arts. 645 and 927(B).

A person should be deemed to be needed for just adjudication only when absolutely necessary to protect substantial rights. Courts are to determine whether a party should be joined and whether the action should proceed if a party cannot be joined by a factual analysis of all the interests involved. *Tensas Par. Police Jury v. Perritt*, 50,123 (La. App. 2 Cir. 9/30/15), 181 So. 3d 143. An adjudication made without making a person described in La. C.C.P. art. 641 a party to the litigation is an absolute nullity. *Tensas Par. Police Jury v. Perritt*, *supra*.

The Arledges claim in brief that they raised nonjoinder of Black Gold at a hearing on March 14, 2019, during their argument on their exception of no right of action. Review of the transcript reveals that they referred to Black Gold as "one – well, almost required party." We further note that the Arledges named only the Robertsons as defendants-in-reconvention, apparently laboring under the belief that their presence alone was sufficient for the trial court to award the Arledges a servitude over "neighboring Deborah Plantation."

As previously noted, the Robertsons specifically pled in their original petition for servitude that they were the sole members of Black Gold and consequently owned Deborah Farms. During the trial, it was not disputed that the Robertsons were the sole members of Black Gold. Dusty Myers testified that he had a lease from Black Gold and that he farmed all but 100 acres of the farmable acres. There is no evidence that indicates that any of the acres he farmed would be affected by the servitudes at issue.

10

In view of the above, we do not find that the trial court erred in failing to notice on its own motion that Black Gold and Dusty Myers were necessary parties. Their absence does not frustrate the trial court's ability to accord complete relief among those already parties. Furthermore, the absence of Black Gold and Dusty Myers as parties in this litigation does not, as a practical matter, impede their ability to protect their interests. La. C.C.P. art. 641. *See Greenway v. Wailes*, 41,412 (La. App. 2 Cir. 8/1/06), 936 So. 2d 296.

We find no merit to this assignment of error.

## JUDICIAL ADMISSION

The Arledges contend that the trial court erred in finding that they made a judicial admission that Parish Road 6611 provides a suitable passageway contemplated by La. C.C. art. 689 and, thus, they were not the owners of an enclosed estate.

A judicial confession is a declaration made by a party in a judicial proceeding. It constitutes full proof against the party who made it, is indivisible, and may be revoked only on the ground of error of law. La. C.C. art. 1853; *Cichirillo v. Avondale Indus. Inc.*, 04-2894 (La. 11/29/05), 917 So. 2d 424; *Blackjack Farms, L.L.C. v. Richmond*, 53,986 (La. App. 2 Cir. 6/30/21), — So. 3d —, 2021 WL 2676935. A declaration made by a party's attorney or mandatary has the same effect as one made by the party himself. La. C.C. art. 1853, Revision Comment (b); *C.T. Traina Inc. v. Sunshine Plaza Inc.*, 03-1003 (La. 12/3/03), 861 So. 2d 156; *Burch v. Burch*, 51,780 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1138.

11

In its written opinion, the trial court cogently stated:

> Ironically, Arledge offered Robertson a route through his property to Parish Road 6611 as his solution to provide Arledge access to a public road. When given an opportunity by the Court to withdraw Option 3 as a solution to Robertson's enclosed estate status, Arledge refused; and he maintained that Option 3 was a viable solution. The Court considers Arledge's stance in this regard as a judicial admission that Parish Road 6611 is a public road which provides suitable passageway contemplated by Article 689. If Option 3 would be a viable solution for Robertson's enclosed status, then logically, Arledge's access to that same Parish Road 6611 could not possibly render his 440 acres to be declared an enclosed estate.

In brief, the Arledges argue that they never admitted that Parish Road 6611 and the 80-foot right-of-way were suitable for vehicular traffic in all seasons. However, review of the record reveals that, in their reconventional demand, the Arledges proposed a path incorporating Parish Road 6611 and the 80-foot right-of-way (Option 3) as the shortest route to a public road for the Robertsons in lieu of Option 1. Mr. Arledge admitted in his testimony that Option 3 was the one he requested in his reconventional demand. At the conclusion of the evidence, when the trial court asked counsel for both sides if there was really an issue about Option 2 being the shortest and least injurious route for Mr. Robertson, counsel for the Arledges stated that he still wanted to brief that issue.

We agree with the trial court's analysis recited above. Throughout the record, the Arledges repeatedly put forth Parish Road 6611 and the 80-foot right-of-way as an option which was suitable for the Robertsons.[8] In light of

---

[8] In their brief, the Arledges asserted that they offered this passage because the Robertsons requested the servitude of passage to put their 47 acres in the WRP, a wetland conservation program. However, Mr. Robertson testified at trial that he was in court to get access to his 47-acre tract. He further stated that, because he lacked written access, his contract with the WRP no longer existed.

this, we find the Arledges' argument that these roads were now unacceptable for them is disingenuous. This assignment of error is without merit.

## ENCLOSED ESTATE

The Arledges assert that the 440 is an enclosed estate under Louisiana law because it lacks year-round access to a public road and the trial court erred in denying their reconventional demand.

La. C.C. art. 689 provides, in pertinent part:

> The owner of an estate that has no access to a public road or utility may claim a right of passage over neighboring property to the nearest public road or utility. He is bound to compensate his neighbor for the right of passage acquired and to indemnify his neighbor for the damage he may occasion.

The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic or utility that is reasonably necessary for the use of that estate. La. C.C. art. 690. The owner of the enclosed estate may construct on the right-of-way the type of road, utility, or railroad reasonably necessary for the exercise of the servitude. La. C.C. art. 691. An estate will be considered enclosed where its access is insufficient, as well as when there is no access. *Corley v. C & J Frye Properties, LLC*, 49,969 (La. App. 2 Cir. 8/19/15), 176 So. 3d 439, *writ denied*, 15-1887 (La. 11/20/15), 180 So. 3d 318.

In relevant part, La. C.C. art. 692 states:

> The owner of the enclosed estate may not demand the right of passage . . . anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road . . . at the location least injurious to the intervening lands.

In addition to the Arledges' judicial admission pertaining to Parish Road 6611 and the 80-foot right-of-way discussed *supra*, we agree with the trial court's assessment that the trial testimony was conflicting as to whether

13

Parish Road 6611 was passable year-round. One of the photos relied upon by the Arledges showed flooding from an atypical episode of record rainfall that was so severe it closed local schools, a fact brought out only on cross-examination. While the Arledges' self-serving testimony painted a dire picture of the access and the alleged failure of the police jury to make repairs, other witnesses presented a more balanced view. Mr. Thompson, the police jury president, discussed work done on the road and the right-of-way when requested but candidly admitted that they had only one road grader and a large parish. He also admitted that it could be difficult to work on the road in winter. Dusty Myers stated that Parish Road 6611 was the only road he used for farming, and that he used it at least two or three times per week and every day during farming season. Most times during farming season, farm equipment could be taken in on that road, but other times not. He testified he had never seen it completely flooded out. While he could get back there during winter, he had no need to do so. He said that there were times he was unable to plant because the fields were saturated, not due to the condition of the roads. Jimmy Myers testified that he regularly used Parish Road 6611 and that he could get in and out of it every month of the year, although he would need four-wheel drive in January. According to his testimony, farmers use Parish Road 6611 for planting and getting their crops out. Mr. Robertson testified as to his own use of Parish Road 6611 before he retired from farming. He stated that he mostly used it to get his crops out but that everyone else used it year-round.

In *Blackjack Farms, L.L.C. v. Richmond*, *supra*, the owner of an enclosed estate sought a right of passage that provided all-weather, year-round access. The trial court balanced the interests of all parties and chose a

route that was not the one desired by Blackjack. It noted that, as the property was in a flood plain and subject to seasonal flooding, Blackjack could not expect all-weather access to its property. In affirming, this court observed that, even though Blackjack requested an all-weather, year-round road, it did not have "all-weather property." A similar situation is present here, where the record indicates that the property was located in a wetlands area.

Based on the unique facts presented in the instant case, we find that the trial court was correct in denying the Arledges' reconventional demand on the basis that they failed to prove that their property had insufficient or no access to a public road and that, consequently, their property was not an "enclosed estate" as contemplated by La. C.C. art. 689. This assignment of error lacks merit.

### APPLICABILITY OF LA. C.C. ART. 694

The Arledges contend that the trial court erred in finding that La. C.C. art. 694 was inapplicable in the instant case because the law recognizes a right of passage, whether forced or gratuitous, where the owner of the dominant estate has been unreasonably denied access to an existing, historical service road. They claim that the portion of the Trunkline Road leading to the front gate of Deborah Farms constituted such a road.[9]

La. C.C. art. 694 provides:

When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned

---

[9] According to the testimony presented at trial, the Arledges had used this road in the past. At one point, the parties entered into a written contract allowing the Arledges to go through the front gate of Deborah Farms; either side could cancel the contract. Numerous conflicts between the parties ensued. After an incident when a member of the Arledge family allegedly fired a shot over the head of a Robertson employee, the Robertsons cancelled the contract. Such incidents arguably demonstrate that the Robertsons' refusal to allow the Arledges to use the road was not "unreasonable."

15

becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road . . ., and even if the act of alienation or partition does not mention a servitude of passage.

An essential element of asserting the right to have a gratuitous servitude of passage fixed by the trial court under Article 694 is proof that the dominant estate is enclosed. *Phipps v. Schupp*, 2014-0672 (La. App. 4 Cir. 3/18/15), 163 So. 3d 212, *writ denied*, 15-0778 (La. 6/1/15), 171 So. 3d 265. Because we agree with the trial court's ruling that the Arledges failed to prove that their property falls under the definition of an enclosed estate, we also concur with the trial court's conclusion that La. C.C. art. 694 is inapplicable to the instant case.

## EXCLUSION OF EXPERT WITNESS

The Arledges contend that the trial court abused its discretion by excluding the testimony of their expert, Don Lockard, on the right of way value and associated damages. The Robertsons maintain that the trial court properly excluded his testimony due to the Arledges' failure to timely provide his expert report.

The initial scheduling order, which set trial for July 20 and 21, 2020, was signed on February 20, 2020. A joint motion for extension of time to exchange "will call" witness lists was filed on March 13, 2020, and the parties were ordered to exchange lists on or before April 15, 2020. Due to the COVID-19 pandemic, on April 16, 2020, a joint motion for extension of deadlines under the current scheduling order was filed; an order was signed on April 23, 2020, which required submission of witness lists by May 6, 2020, and completion of discovery and inspection of exhibits by June 5, 2020. Due to the COVID-19 public health emergency and a death in the

16

Arledge family, on July 6, 2020, the Arledges requested that the trial court extend the delays for exchanging lists of trial witnesses and exhibits until July 9, 2020. In a phone conference, the Robertsons agreed to an extension until the week before trial. However, no report from Lockard was forthcoming.

At the end of the first day of trial, a document was given to the Robertsons and the judge giving reasons for Lockard's failure to provide a report.[10] During the second day of the trial, the trial court stated that the document, alternatively referred to as a letter or report, contained no appraisal and essentially said Lockard was not able to provide a report for damages. In light of that, the trial court concluded that it did not see how Lockard's testimony would help it decide the issues before it. The trial court noted that the case had been pending since 2018. As to the Arledges' claim that the legal descriptions of the three options were not supplied until the day trial commenced, the Robertsons asserted that the pleadings included sufficient descriptions of the paths and that the Arledges had the survey map since early June. The trial court allowed the Arledges to make a proffer of Lockard's testimony.

The abuse of discretion standard applies to the trial court's ultimate conclusion as to whether to exclude expert witness testimony. *Smart v. Kansas City S. R.R.*, 36,404 (La. App. 2 Cir. 11/6/02), 830 So. 2d 581. Absent an abuse of discretion, the trier of fact's decision in implementing and enforcing a pretrial scheduling order will be upheld. *Allen v. Bridges*, 41,169 (La. App. 2 Cir. 11/1/06), 942 So. 2d 686.

---

[10] Although the trial court stated that it would allow this document to be made part of the record, it was not included in the appellate record.

17

In light of the many extensions granted in this case, we find the trial court did not abuse its wide discretion in excluding Lockard's testimony when no timely report was furnished to the Robertsons. Furthermore, we have reviewed the testimony that was proffered. No helpful information was elicited from the witness, as he had not performed any appraisals or analysis.

## AMOUNT OF AWARD

Both sides appeal from the monetary award of $54,000. The Arledges insist that the trial court's award of $54,000 for the loss of two deer stands was inadequate and should be raised to $120,000. On the other hand, the Robertsons contend that the trial court erred in making an excessive award without any evidentiary or factual basis.

Pursuant to La. C.C. art. 689, the owner of an enclosed estate awarded a right of passage over neighboring property to the nearest public road is "bound to compensate his neighbor for the right of passage acquired and to indemnify his neighbor for the damage he may occasion."[11] Under an article 689 servitude of passage, the enclosed dominant estate must pay the owner of the servient estate for the servitude and pay for any damages the enclosed estate may cause. See Sally Brown Richardson, *An Exploration into*

---

[11] The language "to compensate his neighbor for the right of passage acquired" was added by Acts 2012, No. 739, § 1. We note that the primary cases relied upon by the Robertsons – *Dickerson v. Coon*, 46,423 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1135, and *Greenway v. Wailes*, *supra*, – were rendered prior to the amendment. The *Dickerson* court specifically noted that, at that time, "La. C.C. art. 689 refers to indemnification for damages that may be occasioned; it does not provide for compensation to the owner of the servient estate for the right of passage." Similarly, the *Greenway* court stated, "Article 689 speaks of damage. It does not discuss compensation based upon the appraised value as though the servient estate used for the roadway has been expropriated. We find that the trial court's focus on the appraised values of these lake front properties and the enhancement of the value of the Greenway tract attempted to provide Wailes a measure of compensation analogous to expropriation, which is not the test of Article 689. Instead, Article 689 only allows that the property 'may' receive 'damage' requiring indemnification by the owner of the dominant estate." Due to the 2012 amendment, cases predating the addition of the compensation element are of limited use now.

18

*Louisiana Enclosed Estate Doctrine*, 94 Tul. L. Rev. 519, 539 (2020), for an in-depth discussion of the developments in the law.

By filing suit for right of passage, a party effectively alleges willingness to indemnify the owner of the servient estate for the damages resulting from use of the servitude. There is no need for the owner of the servient estate to demand payment of indemnification that was already admitted. *Phillips Energy Partners, LLC v. Milton Crow Ltd. P'ship*, 49,791 (La. App. 2 Cir. 5/20/15), 166 So. 3d 428, *writ denied*, 15-1396 (La. 10/2/15), 186 So. 3d 1148. The burden is on the owner of the servient estate to prove the amount of damage resulting from the servitude of passage. *Blackjack Farms, L.L.C. v. Richmond*, *supra*; *Phillips Energy Partners, LLC v. Milton Crow Ltd. P'ship*, *supra*.

The indemnity is for the "damage" caused to the servient estate. That measure is different from compensation due to a landowner for the value of the servitude of passage. The amount of the indemnity is fixed in light of the damage occasioned to the servient estate. *Phillips Energy Partners, LLC v. Milton Crow Ltd. P'ship*, *supra*.

Absent some extraordinary circumstances, the value of a servitude taken is not the same as the full market value of the land. *Hutchison v. Jackson*, 399 So. 2d 1238 (La. App. 3 Cir. 1981). Since the owner of the property over which a servitude is granted retains certain rights over the servitude property, it would be error for the trial court to order the person in whose favor the servitude was granted to pay the full market value of the property. *Hutchison v. Jackson*, *supra*.

We review a trial court's decision on damages for abuse of discretion and note that the trial court has vast discretion in determining whether to

award damages. *Altemus v. Boudreaux*, 2015-725 (La. App. 3 Cir. 12/23/15), 184 So. 3d 142, *writ denied*, 16-0157 (La. 3/24/16), 190 So. 3d 1197.  A trial judge has wide discretion in determining the amount of damages occasioned by the party on whose estate the right of passage is fixed.  *May v. Miller*, 2006-418 (La. App. 3 Cir. 10/11/06), 941 So. 2d 661, *writ denied*, 07-0009 (La. 3/9/07), 949 So. 2d 443.

Our review of the trial court's total award of $54,000 demonstrates that the trial court gave compensation of $4,000 for the Option 2 right of passage acquired and then indemnity of $50,000 for the Arledges' loss in perpetuity of their two deer stands.  As to the Arledges' claim on appeal that the award is inadequate and should be raised to $120,000, we note that they have cited no authority supporting such an increase.  Accordingly, that claim is denied.

The Robertsons seek reduction of the $4,000 portion of the award and reversal of the $50,000 portion.  The $4,000 award was based upon the evidence presented by Creech, the Robertsons' own expert witness, who gave a range of reasonable price per acre of $3,000 to $4,278, with an average of $4,000.  The trial court did not reduce the value of the servitude, as had been done in *Hutchinson v. Jackson*, *supra*.  However, given the range of prices submitted by Creech, we find no abuse of the trial court's wide discretion in making this portion of the award.

As to the $50,000 award for indemnity, we observe that the burden was on the Arledges, as owners of the servient estate, to prove the amount of damage resulting from the servitude of passage.  For reasons discussed *supra*, their expert witness was not allowed to testify.  Had he been allowed to testify, he had no helpful information to offer the trial court.  Further, the

evidence adduced at trial shows that the Arledges did not lease any of their property to any third parties for hunting and thus there was no loss of income. No evidence was adduced as to the cost to relocate or replace any deer stands. At trial, Mr. Arledge testified he had no monetary figures to provide to the court.[12] The record before us is completely devoid of any evidence justifying the trial court's $50,000 award pertaining to damages for the loss of use of two deer stands. Therefore, we must reverse and vacate that portion of the award. *See Blackjack Farms, L.L.C. v. Richmond*, *supra*; *Dalton v. Graham*, 53,452 (La. App. 2 Cir. 4/22/20), 295 So. 3d 437, *writ denied*, 20-00740 (La. 10/6/20), 302 So. 3d 535. We again note that the trial court's ruling that Option 2 was least injurious was carefully crafted to not interfere in any way with the Arledges' farming activities, crawfish ponds, duck ponds and blinds. The evidence shows that there are numerous other deer stands located on the property. Any inconvenience or interference with the use of the property is minimal.

Accordingly, the total award of $54,000 is reduced and amended to the sum of $4,000.

**MOTION FOR SUMMARY JUDGMENT**

The Arledges contend that the trial court abused its discretion in denying their motion for summary judgment.

---

[12] At trial, Mr. Arledge testified that he did not know and could not "put an exact dollar" amount on what they spent on hunting which was their "enjoyment during the winter." When asked again if he had a price in mind about what the right-of-way should cost, he said he had "no idea."

In the section of their posttrial brief addressing indemnity and damages if Option 2 was chosen, the Arledges suggested that the "value of the deer hunt which is represented in a hunting club membership is at least $5,000 annually." However, no such figure was ever discussed, much less established at trial.

An appeal may not be taken from a trial court's denial of a motion for summary judgment. La. C.C.P. art. 968. Since a trial court's action in overruling a motion for judgment on the pleadings, or for summary judgment, is merely an interlocutory judgment causing no irreparable injury, it cannot be appealed, except under the appeal from the final judgment rendered in the case. La. C.C.P. art. 968, Comment D. On appeal of a final judgment, review may be had of the denial of a motion for summary judgment by the trial judge, which is based solely upon the resolution of a legal question. *Pittman v. Metz*, 47,320 (La. App. 2 Cir. 9/20/12), 109 So. 3d 1; *Magill v. Owen Const. Co.*, 434 So. 2d 520 (La. App. 2 Cir. 1983).

Following arguments, the trial court stated that it had to deny the Arledges' motion for summary judgment "because it's obvious that there are disputed facts that are before the court." Additionally, the trial court was influenced by the Robertsons' argument that, since the Arledges' request for a servitude was an alternative request which hinged on the Robertsons being granted a right-of-way at the location they requested, the Arledges' motion was premature.

Since it was dismissed by the trial court due to the presence of disputed facts, not a legal issue, review of the Arledges' motion for summary judgment is not properly before us on appeal. Accordingly, this assignment of error is dismissed.

## CONCLUSION

Based on the foregoing, we reverse in part, amend in part, and affirm in part the trial court judgment. The trial court's award of $50,000 for indemnification is reversed and vacated. Accordingly, the portion of the judgment awarding $54,000 for the right of passage acquired and to

22

indemnify for the damage occasioned by the passageway is amended to $4,000.  In all other respects, the trial court judgment is affirmed.

Costs of this appeal are assessed against Rickie Reese Arledge and Kimberly Kirkland Arledge.

**REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART.**

23